SOUTHERN DISTRICT OF MISSISSIPPI
FILED
APR 26 2021
ARTHUR JOHNSTON
BY_____ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

In the Matter of the Extradition of ) Misc. No. 2:21 mc61- MTP
William Lyle Johnson )

COMPLAINT
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to the Kingdom of the Netherlands.

2. There is an extradition treaty in force between the United States and the Kingdom of the Netherlands (the "Treaty").[1]

3. The Treaty provides in Article 11 for the provisional arrest and detention of alleged fugitives pending the submission of a formal request for extradition and supporting documents.

4. In accordance with Article 11 of the Treaty, the Netherlands has asked the United States for the provisional arrest of William Lyle JOHNSON, with a view toward his extradition.

5. According to the information the Government of the Netherlands has provided, JOHNSON is accused of (1) (preparation of) murder, in violation of Dutch Criminal Code

---

[1] *See* Extradition Treaty Between the United States of America and the Kingdom of the Netherlands, U.S.-Neth., June 24, 1980, 35 U.S.T. 1334 ("the 1980 Treaty"), *as amended by* the Agreement comprising the instrument as contemplated by Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union signed at Washington on 25 June 2003, as to the application of the Extradition Treaty Between the United States of America and the Kingdom of the Netherlands signed at the Hague on 24 June 1980, U.S.-Neth., Sept. 29, 2004, S. TREATY DOC. NO. 109-14 (2006) (the "Agreement"), *with* Annex

("DCC") Articles 289 and 46; (2) incitement and/or accessory to murder, in violation of DCC Articles 289, 47, and/or 48; (3) (preparation of) aggravated manslaughter, in violation of DCC Articles 288 and 46; (4) incitement and/or accessory to aggravated manslaughter, in violation of DCC Articles 288, 47, and/or 48; (5) (preparation of) manslaughter, in violation of DCC Articles 287 and 46; (6) incitement and/or accessory to manslaughter, in violation of DCC Articles 287, 47, and/or 48; (7) (preparation of) extortion, resulting in death, in violation of DCC Articles 317 and 46; (8) (preparation of) attempted extortion, resulting in death, in violation of DCC Articles 317, 45, and 46; (9) (preparation of) theft with violence, resulting in death, in violation of DCC Article 312; (10) incitement and/or accessory to theft with violence, resulting in death, in violation of DCC Articles 312, 47, and/or 48; (11) (preparation of) premeditated grievous bodily injury, resulting in death, in violation of DCC Articles 303 and 46; (12) incitement and/or accessory to premeditated grievous bodily injury, resulting in death, in violation of DCC Articles 303, 47, and/or 48; (13) (preparation of) grievous bodily injury, resulting in death, in violation of DCC Articles 302 and 46; (14) incitement and/or accessory to grievous bodily injury, resulting in death, in violation of DCC Articles 302, 47, and/or 48; (15) (preparation of) premeditated physical abuse, resulting in death, in violation of DCC Articles 301 and 46; (16) incitement and/or accessory to premeditated physical abuse, resulting in death, in violation of DCC Articles 301, 47, and/or 48; (17) intentional deprivation of liberty, in violation of DCC Article 282; (18) hostage-taking, in violation of DCC Article 282a; and (19) threat of a criminal offense, in violation of DCC Article 285.

6.   These offenses were committed within the jurisdiction of the Netherlands. On May 19,

---

(collectively, the "Treaty"), and related exchange of notes. The Annex reflects the integrated text of the provisions of the 1980 Treaty and the Agreement.

2020, the Public Prosecutor of the Judicial District of Maastricht, Mr. M.M.M. Smits, a judicial authority authorized to issue arrest warrants under the laws of the Netherlands, issued a warrant for JOHNSON's arrest for these offenses. The provisional arrest request provides the following facts:

a. On November 26, 2019, at around 3:35 p.m., Dutch authorities received an emergency call to go to the address Roefsstraat 6 in Bergen, Limburg, which was the home of Thomas Schwarz (the "victim"). After the victim failed to report to work that morning, Witness-1, one of the victim's colleagues, visited the victim's home that afternoon. Upon Witness-1's arrival, he found the victim's front door open and the door handle stained with blood. At around 3:53 p.m., Dutch authorities arrived at the victim's home to find the victim's body lying on the floor next to his dining room table with his hands and feet tied with wire and his body surrounded by blood. On the ground, behind the victim's body, were a laptop and wallet containing several credit cards. The autopsy indicated that the victim had sustained multiple injuries. The victim had a few deep stab wounds, including wounds to his right upper leg and right upper arm. He also had serious injuries to his back, and his ribs were broken. In addition, his throat had been cut, causing him to lose a great deal of blood.

b. Witness-1 told Dutch authorities that four to five weeks before November 26, 2019, according to the victim, the victim arrived home to encounter two English-speaking individuals, who requested money from him. After the victim told the two individuals that he would not give them money, the two individuals stated that another individual, who was not as friendly, would return to request money from him. The victim spoke with Witness-1 on November 25, 2019, the day before his murder, but he did not mention

to Witness-1 that anything was wrong.

c. Statements collected from the victim's neighbors suggested that on the morning of November 26, 2019, sometime before 7:00 a.m., a Volkswagen Polo with license plate number FW 1457 pulled up to Keulerstraat, a street that runs perpendicular to the victim's home on Roefsstraat. Two men exited the car and walked down Roefsstraat, while a third man remained in the car. A neighbor on Roefsstraat ("Witness-2") heard the victim's front door slam as well as voices of different people in the victim's home, some speaking German, and others that Witness-2 recognized as the voices of the victim and, Witness-2 believed, the victim's girlfriend. After a few minutes, Witness-2 heard a loud bang and yelling coming from the victim. Witness-2 then went to the victim's home and rang his doorbell, but no one opened the front door. When Witness-2 looked through the living room window, Witness-2 saw one person bent over, holding a sheet or blanket, as well as a woman, who Witness-2 believed to be the victim's girlfriend; however, Dutch authorities have since confirmed that the victim's girlfriend could not have been present at the time of the murder. Witness-2, after returning to Witness-2's home, noticed the same Volkswagen Polo enter Roefsstraat and stop at the front of the victim's home. A woman left the victim's home, slammed the front door, and entered the Volkswagen Polo, which then promptly drove away. According to another neighbor of the victim ("Witness-3"), the Volkswagen Polo entered Gildenstraat, which runs parallel to Roefsstraat, after abruptly driving away at around 7:15 a.m. At around 7:35 a.m., Witness-3 noticed a man walking to the Volkswagen Polo calling out to others in English to "come with the car." The man then drove the Volkswagen Polo onto Roefsstraat, where two men, wearing hats, entered the Volkswagen Polo.

d. Because the victim was a German national and the Volkswagen Polo featured a German license plate number, Dutch authorities contacted German authorities to gather more information. German authorities revealed that, on November 24, 2019, at around 6:00 p.m., two men, Justin Steven Causey and the German-speaking Lukas Fecker, rented the Volkswagen Polo with license plate number FW 1457 from the German rental car company Call & Drive Autovermieting GmbH in Frankfurt, Germany. Camera images from Call & Drive Autovermieting GmbH on November 24, 2019, show two men who resemble Causey and Fecker. On November 26, 2019, at around 1:24 p.m., Causey, using the mobile phone number +19707292718 (the "970 number"), called Call & Drive Autovermieting GmbH to ask if he could return the Volkswagen Polo. According to the rental agent at Call & Drive Autovermieting GmbH, Causey returned the Volkswagen Polo at around 1:30 p.m., but without the car's four floor mats. Causey stated that he had cleaned the floor mats but had forgotten to put them back in the car before returning it.

e. Based on this information, Dutch authorities formally opened an investigation into Causey and the 970 number. Historic telephone data collected from phone transmission masts in Bergen, Netherlands, revealed that the 970 number appeared in the vicinity of the crime scene on November 19-21, 2019, as well as on the day of the murder of November 26, 2019. The telephone data collected from the phone transmission mast in Bergen, Netherlands, showed that on November 26, 2019, at 6:30 a.m. and 7:16 a.m., the 970 number sent a signal to the mast that covers an area that includes the victim's home. Additional telephone data showed that on November 25, 2019, at around 5:45 p.m., the 970 number crossed the border along autobahn 61 from Germany into Venlo, Netherlands. This telephone data matched prior GPS data from German authorities,

5

which showed that the Volkswagen Polo with license plate number FW1457 crossed the border from Germany into Venlo, Netherlands, on November 25, 2019, at around the same time as the 970 number. Further analysis of the 970 number showed that the WhatsApp account associated with this phone number contained a photo of a male resembling Causey, which was consistent with camera images of Causey from Call & Drive Autovermieting GmbH.

f. Historic print data and video images show that on dates between November 19 and 26, 2019, Causey stayed at the Van der Valk hotel in Molenhoek, Netherlands, which is approximately 15.5 miles away from Bergen, Netherlands. Video images and historical telephone data show that Causey stayed in the Van der Valk hotel with one individual on dates between November 19-22, 2019, and was pictured twice with a second individual who stayed in the direct vicinity of the victim's home in Bergen.

g. Additional historic print data obtained from German authorities show that on November 26, 2019, at around 8:22 a.m., Causey traveled across the border from Venlo, Netherlands, into Germany, until he reached Frankfurt, where he returned the Volkswagen Polo to Call & Drive Autovermieting GmbH. Forensic examination of the Volkswagen Polo by German authorities revealed trace amounts of blood in the car. Further laboratory examination showed that the trace amounts of blood found in the car matched blood samples from the victim.

h. Later, Dutch authorities sought information from U.S. authorities, pursuant to a mutual legal assistance request, regarding Causey's status in the United States. Information provided by the U.S. authorities indicated that Causey had been arrested in Colorado, in December 2020, on Colorado State charges of drug and firearms possession. The FBI

6

    informed the Dutch authorities that when Causey was arrested in December 2020, he stated that he was doing protection work for Lukas Fecker, a resident of Switzerland and owner of the company "Innovation Brain." A supplemental mutual legal assistance request sent to the United States requesting Causey's bank records revealed that on December 27, 2019, Credit Suisse Bank, on behalf of Innovation Brain, deposited $5,980 USD into Causey's bank account.

i. Lukas Fecker's company, Innovation Brain, buys companies on the verge of bankruptcy. It appears that the victim owned Taurus Farms, a company in North Macedonia that was in financial trouble. Dutch authorities believe it likely that the victim and Fecker had a business relationship, and that the victim possibly owed Fecker money. Fecker is currently detained and awaiting trial in the Netherlands, in connection with his role in the crimes described herein.

j. Additional historic telephone data collected from phone transmission masts in Molenhoek, Netherlands, revealed that the phone number +12012756406 (the "201 number") appeared in the vicinity of the Van der Valk hotel from November 25-26, 2019. Additionally, the user of the 201 number followed the same physical route as Causey and the 970 number, including the vicinity of the crime scene on the day of the murder. Specifically, the 201 number appears on (1) November 25, 2019: (a) at approximately 5:45 p.m., southeast of Venlo, Netherlands; and (b) between approximately 7:36 p.m. and 8:43 p.m., at the Van der Valk hotel; and (2) on November 26, 2019: (a) at approximately 6:30 a.m., in the vicinity of the crime scene, the Roefsstratt in Bergen, Netherlands; and (b) at approximately 8:22 a.m., near the border crossing at Venlo into Germany.

k. An open source investigation that Dutch authorities conducted into the 201 number, using the website Truecaller.com, revealed the suspected user of the 201 number ("Individual-2"). Pursuant to a Dutch mutual legal assistance request, U.S. authorities confirmed that this number is associated with Individual-2. Specifically, Individual-2 provided the 201 number to the person who, until 2019, was his landlord in New Jersey, for purposes of contacting him.

l. Later, Dutch authorities obtained information from German and U.S. authorities, pursuant to a mutual legal assistance request, concerning JOHNSON's travel history. Flight information provided by German authorities from the airline company, Eurowings, shows that on November 24, 2019, William Lyle JOHNSON and Individual-2 boarded flight EW1113 from Newark, New Jersey, which arrived at in Dusseldorf, Germany, on November 25, 2019, at 6:05 a.m. Booking records indicate that both flight reservations were made on November 24, 2019, at 12:14 a.m., listing lukasfecker4@checkinaddress and the 970 number in the contact information.

m. Further analysis of camera images from the Van der Valk hotel shows that two men accompanied Causey on the night of November 25-26, 2019, one of whom resembled JOHNSON, as compared with a photo from JOHNSON's driver's license provided by U.S. authorities. The hotel camera images show the following: On November 25, 2019, at 7:07 p.m., Causey, JOHNSON, and Individual-2 arrive at the hotel. The following morning, at 6:02 a.m., three men leave the hotel: The first man has a shaved head that is consistent with the image of Johnson from the previous night. The second man is slim with dark hair and facial hair consistent with the image of Individual-2 from the previous night. The third man, who is heavier than Individual-2, has a full head of lighter-colored

      hair and appears to be wearing a black and electric-blue jacket, consistent with the photo of Causey from the previous night. One minute later, at 6:03 a.m., a car whose appearance is consistent with a white VW Polo drives out of the hotel parking lot.

  n.  Information obtained from U.S. authorities via a request for mutual legal assistance revealed that (1) JOHNSON used a personal debit card to make purchases in Hattiesburg, Mississippi, in late November 2019; (2) that JOHNSON and Individual-2 made purchases at several international airports on the same dates – specifically, at the Newark International Airport (approximately November 24, 2019), the Düsseldorf International Airport (approximately November 25, 2019), and the Vnukovo International Airport in Moscow, Russia (approximately November 28, 2019); and (3) JOHNSON made a purchase at a parking garage in New Orleans on approximately November 29, 2019. Individual-2 also transferred money from his bank account to JOHNSON's bank account on three occasions between January 2019 and May 2020, which further demonstrates that Individual-2 and JOHNSON knew each other.

7.    The Schedule of Offenses appended to the Treaty, at paragraphs 1, 2, 3, 8, 9, and 12, covers the aforementioned offenses.

8.    JOHNSON may be found within the jurisdiction of this Court at 74 Southgate Road in Hattiesburg, Mississippi.

9.    The Government of the Netherlands has represented that it will submit a formal request for extradition, supported by the documents the Treaty specifies and within the time the Treaty requires.

10.   JOHNSON likely would flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for JOHNSON's arrest issue in accordance with 18 U.S.C. § 3184 and the Treaty, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered, and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

_____
CARLA J. CLARK
Assistant United States Attorney

Sworn to before me and subscribed in my presence this 26th day of April, 2021, at Hattiesburg, MS.

_____
HON. MICHAEL T. PARKER
United States Magistrate Judge

10